IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Erick Thomlinson Wannamaker, )<br>  )<br>         Plaintiff, )<br>  )<br>    vs. )<br>  )<br>Officer Parrot, *Employee*, )<br>  )<br>         Defendant. )<br>_____) | Civil Action No. 6:14-2571-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

  The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

  The defendant filed a motion for summary judgment (doc. 28) on November 7, 2014. The same day, the undersigned issued a *Roseboro* (doc. 29) order to apprise the plaintiff of summary judgment procedure, as required by *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff filed a response on November 20, 2014 (doc. 31), and the defendant filed a reply on November 21, 2014 (doc. 38).

## **FACTS PRESENTED**

  The plaintiff is a currently an inmate at Livesay Correctional Institution within the South Carolina Department of Corrections ("SCDC"), but was housed at SCDC's Trenton Correctional Institution on December 23, 2013, when he was allegedly assaulted by a group of inmates. The defendant Officer Parrot is an SCDC correctional officer who was working at Trenton when the alleged assault took place. The plaintiff claims that Officer Parrot and another officer allowed seven or eight inmates to leave their assigned

dorm and enter the plaintiff's dorm. Those inmates then gathered with others in the plaintiff's dorm, and the group subsequently attacked the plaintiff. While he did not notify Officer Parrot of his concerns over the gathering of the inmates, the plaintiff claims that Officer Parrot should have recognized the potential for trouble and taken action to prevent it: "I felt whatever was going on, this officer sees and is smart enough to see that something's wrong and that something's about to happen so he would do something before something happened, but this officer did not do nothing" (comp., p. 3). The plaintiff then went to his locker, where he was attacked from behind by the group of inmates, leaving him bruised and bleeding. Officer Parrot then came out of his office, and the inmates scattered, with those from the other dorm allowed to return to their assigned area. Officer Parrot later came into the plaintiff's dorm to do a security check and then a head count, but the plaintiff did not tell him that he had been attacked, nor did he tell them that he needed medical attention. Instead, he insists that Officer Parrot should have seen what had happened and that he needed medical attention: "I'm almost positive that [Officer Parrot] seen the incident or at least the disturbance and the crowd of inmates. Also I'm positive and sure that Officer Parrot seen my bruised face and bloodied towel that I was holding to stop the blood that was coming from my face and nose" (*id.*, p. 4). He states that later that night, he was "pulled out by a Sgt. and brought to operations," where he told Lt. Thomas about the incident and gave a written statement, before being moved to a different dorm (*id.*, p. 5). In his complaint, the plaintiff alleges that he did not go to the medical unit until seven days later.

        Attached to the complaint are a number of requests and grievance forms submitted by the plaintiff to the Trenton staff between January and June 2014, all relating to the alleged assault (doc. 1-1, pp. 1-17; doc. 1-2, pp. 1-5). In a grievance signed January 4th, the plaintiff writes that he went to the medical unit one week after the assault, after

asking another officer, Lt. McKie, while his cell was being "shook down" for contraband (doc. 1-2, p. 2).

With his motion for summary judgment, Officer Parrot provides his affidavit that he has no recollection of any incident involving the plaintiff and that he was never aware that the plaintiff was being threatened by other inmates (doc. 28-2).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### *Failure to Protect*

Prison officials are required to protect prisoners from being attacked by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (suffering physical assaults in prison is not "part of the penalty that criminal offenders pay for their offenses against society") and *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."). A prisoner, in a claim of deliberate indifference with respect to an inmate attack, must show that the defendant showed a deliberate or callous indifference to a *specific, known*, substantial risk of serious harm to the plaintiff. *See Sarratt v. Daughtery,* C.A. No. 2:06-3422-HFF-RSC, 2007 WL 2406784, at *2 (D.S.C. July 16, 2007) (citing *Farmer*, 511 U.S. at 835), *adopted by* 2007 WL 2406783 (D.S.C. Aug. 20, 2007). A prison official cannot be found liable unless it is shown that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he also drew the inference. *Farmer*, 511 U.S. at 835. A negligent failure to protect a prisoner from violence does not violate the Constitution. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (negligence not actionable under Section 1983).

The plaintiff has failed to show that his assault by the group of inmates should have been anticipated by Officer Parrot or that Officer Parrot deliberately took no action to

4

prevent it. The plaintiff's allegations reveal that he did not notify Officer Parrot or any other officer of his safety concerns when the group of inmates gathered in his dorm. Indeed, the plaintiff admits that he really was not concerned himself: "I seen the inmates gathered together, I didn't think nothing of what was going on, because I was new at this institution and felt whatever was going on, it wasn't my concern and it didn't involve me" (comp., p. 3). At best, the plaintiff's claim amounts to negligence by Officer Parrot for his purported failure to manage and control the inmates. However, negligence is not actionable under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986); and *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986). Because the plaintiff has presented nothing to establish that Officer Parrot had specific knowledge that the plaintiff was at substantial risk of serious harm from the gathered inmates, his claim must fail.

***Medical Care***

The plaintiff further alleges that Officer Parrot was deliberately indifferent to his injuries after the assault and that he was denied medical care for seven days. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference

5

thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component-deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The plaintiff claims that he was bruised and bleeding after the assault and that Officer Parrot saw his injuries but ignored them: "Officer Parrot looked at me and kept going and did not call for assistance..." (comp., p. 4). However, the plaintiff can only assume that Officer Parrot actually recognized that he was injured, as the plaintiff presents no allegation that he actually told Officer Parrot of the assault or of his need for medical attention. The plaintiff describes seeing Officer Parrot three times after the assault: first immediately afterwards, then "a few minutes later" when Officer Parrot did a security check, and lastly when Officer Parrot did the "9:20 count" later that evening (*id*., pp. 4-5). Despite these opportunities to ask for medical attention, there is no indication that the plaintiff did so. After the final encounter, the plaintiff does not allege seeing Officer Parrot again. Instead, the plaintiff names other officers with whom he had contact, including an unnamed Sergeant and Lt. Thomas at 11:30 that same evening (*id*., p. 5), then Lt. McKie during a cell shakedown one week later. The plaintiff presents no allegation that any of these officers denied him medical care. The record before the court reveals that the only time the plaintiff requested medical attention was when he told Lt. McKie the following week, and that request was granted (doc. 1-2, p. 2). As the plaintiff has failed to show that Officer Parrot (or any other officer) was deliberately indifferent to his purported injuries, his claim fails.

*Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As set forth above, since there has been no deprivation of a constitutional right in the above-captioned case, Officer Parrot is entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant Officer Parrot's' motion for summary judgment (doc. 28). The attention of the parties is directed to the notice on the next page.

s/Kevin F. McDonald
United States Magistrate Judge

March 30, 2015
Greenville, South Carolina

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).